UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 1:22-CR-10-HAB |
| ) | |
| KENDRICK D. BATES ) | |

**OPINION AND ORDER**

Defendant, Kendrick Bates, is charged in a seven-count superseding indictment with drug and gun crimes. (ECF No. 97). He now moves to dismiss that indictment asserting violations of the Speedy Trial Act, 18 U.S.C. § 3161, and the Sixth Amendment of the U.S. Constitution. (ECF No. 158). In the alternative, Defendant seeks to have certain fingerprint evidence excluded because it was obtained during the allegedly improper delays. (*Id.*). Because the Court finds that any delay was properly excluded from the speedy trial clock and there was no Sixth Amendment violation, Defendant's motion (ECF No. 158) will be DENIED.[1]

**I.   Factual Background**

On March 23, 2022, the Government filed a six-count indictment charging Defendant with Distribution of a Controlled Substance under 21 U.S.C. §841(a)(1) and Possession of a Firearm by a Felon under 18 U.S.C. §922(g)(1). (ECF No. 20). The Court's first scheduling order set trial for this case on May 24, 2022. (ECF No. 40). From then on, the Court granted several continuances.

Defendant filed his first unopposed motion to continue on April 22, 2022, and the trial was reset to August 30, 2022. (ECF No. 50) Co-Defendant, Jacob Belcher ("Belcher"), filed another

---

[1] The Court notes that the deadline to file pre-trial motions expired on March 5, 2024. (ECF No. 146). Defendant filed the present motion to dismiss (ECF No. 158) on March 14, 2024, after the deadline, but the Court permitted him to do so nonetheless.

1

unopposed motion resetting the trial date to November 29, 2022. (ECF No. 51).

On October 18, 2022, Defendant moved to suppress certain evidence (ECF No. 54), and the Court vacated the November 29 trial setting. Following an evidentiary hearing and briefing, the Court denied Defendant's motion to suppress. (ECF No. 78). The Court entered a new scheduling order setting the trial for July 11, 2023. Belcher then filed another unopposed motion to continue the trial and the trial date was reset to October 17, 2023. (ECF No. 80).

On September 19, 2023, the Government filed it First Motion to Continue Trial (ECF No. 86) based on the unavailability of its witness, FBI Task Force Officer, Jack Cain ("TFO Cain"). The Government asserted TFO Cain was an essential witness for its case. Defendant opposed this motion in principal but did not file any meaningful objection with the Court challenging the grounds asserted by the Government for the continuance. The Court granted the Government's motion after determining based on the Government's representations that TFO Cain was an essential witness and unavailable for trial on October 17, 2023. (ECF No. 87). The trial date was reset to November 7, 2023. Two days after the Government filed its motion, it submitted evidence for fingerprint analysis. (ECF No. 158-1).

On October 10, 2023, the Government filed its Second Motion to Continue (ECF No. 91) based again on the unavailability of TFO Cain. Again, Defendant opposed this motion in principal but did not provide any legal basis for the objection. The Court granted the Government's second motion resetting the trial date to December 11, 2023. Nine days after filing its second motion, the fingerprint examination took place which matched Defendant's fingerprints.[2] (ECF No. 158-2).

---

[2] On February 2, 2024, Defendant submitted a discovery request to the Government requesting additional data related to the fingerprint examination. (ECF No. 158-3).

On November 15, 2023, Defendant filed a Motion to Suppress and Request for a *Franks* Hearing, prompting the Court to vacate the December 11, 2023, trial setting. (ECF No. 94). The next day, the Government filed a superseding indictment adding a charge for maintaining a drug premises under 21 U.S.C. §856(a)(1). (ECF no. 97). The Court denied Defendant's Motion to Suppress and *Franks* Request on January 23, 2024. (ECF No. 138). The jury trial was reset to February 27, 2024. (*Id.*).

Defendant then filed its own unopposed motion to continue trial for unavailability of his own witness. (ECF No. 139). The Court granted this motion which ultimately resulted in the current trial setting of March 25, 2024. (ECF Nos. 145, 147). On March 11, 2024, the Government disclosed the full fingerprint examination report. (ECF No. 158-2).

## II.   The Speedy Trial Act

The Speedy Trial Act requires that a defendant's trial start within 70 days from the indictment's filing or the defendant's first court appearance, whichever is later. 18 U.S.C. § 3161(c)(1). If a defendant is not brought to trial within 70 days, he may move to dismiss the indictment. 18 U.S.C. § 3162(a)(2). The Act, however, excludes certain periods of time from the 70-day clock to provide the flexibility to accommodate necessary pretrial proceedings that result in justifiable delays. 18 U.S.C. § 3161(h)(1)-(8); *United States v. Patterson*, 872 F.3d 426, 429 (7th Cir. 2017). These exclusions include delays from pretrial motions, from the absence or unavailability of any essential witness, from a co-defendant's motions when no severance has been granted, and from reasons furthering the ends of justice. 18 U.S.C. § 3161(h). Indeed, in a case with multiple defendants, "any excludable delay attributable to one defendant is excludable as to his co-defendants." *Patterson*, 872 F.3d at 433 (citation omitted).

3

The defendant has the burden of proof of supporting his motion to dismiss, but the Government has the burden of going forward with evidence in connection with any exclusion based on the unavailability of an essential witness. 18 U.S.C. § 3162(a)(2).

### III. Discussion

Before addressing the parties' arguments, the Court has conducted its own analysis of the speedy trial clock in this case which is summarized as follows:

- **Exclusions based upon Motions to Continue filed by Defendant—179 Days**
    - April 22, 2022 Motion
        - Dates Excluded from the Act—131 Days:
            - April 22, 2022 to August 30, 2022
    - February 5, 2024 Motion
        - Dates Excluded from the Act—48 Days:
            - February 5, 2024 to February 6, 2024 and February 8, 2024 to March 24, 2024
- **Exclusions based upon Motions to Continue filed by Co-Defendant—176 Days**
    - August 2, 2022 Motion
        - Dates Excluded from the Act—48 Days:
            - August 31, 2022 to October 17, 2022
    - June 12, 2023 Motion
        - Dates Excluded from the Act—128 Days:
            - June 12, 2023 to October 17, 2023
- **Exclusions based upon Motions to Continue filed by the Government—27 Days**
    - September 19, 2023 Motion
        - Dates Excluded from the Act—21 Days:
            - June 12, 2023 to October 17, 2023
    - October 10, 2023 Motion
        - Dates Excluded from the Act—6 Days:
            - November 8, 2023 to November 14, 2023
- **Exclusions based upon Pre-Trial Motions—297 Days**
    - October 18, 2022 Motion to Suppress
        - Dates Excluded from the Act—227 Days:
            - October 18, 2022 to June 1, 2023
    - November 14, 2023 Motion to Suppress and Request for *Franks* Hearing
        - Dates Excluded from the Act—70 Days:
            - November 14, 2023 to January 22, 2024
- **Exclusions based upon Pro Se Motions filed by Defendant—2 Days**

4

- January 30, 2024 Letter
    - Dates Excluded from the Act—2 Days:
        - January 30, 2024 to January 31, 2024
- **Days Counted against the Speedy Trial Clock—22 Days**
    - March 23, 2022
        - 1 Day
    - June 2, 2023 to June 11, 2023
        - 10 Days
    - January 23, 2024 to January 29, 2024
        - 6 Days
    - February 1, 2024 to February 4, 2024
        - 4 Days
    - February 7, 2024
        - 1 Day

Defendant believes that the Government is responsible for 112 days of improper delay: 49 days from September 19, 2023, until November 7, 2023, and 63 days from October 10, 2023, until December 12, 2023. (*Id.*). But there are clear errors in Defendant's calculations as shown by the Court's chronology. First, Defendant double counted the days from October 10 until November 7, 2023. And, when the Government filed its first motion to continue on September 19, 2023, the Court had already excluded the time through the then-trial setting of October 17 on Belcher's motion. Thus, the Government would only be responsible for 21-days' delay based on its first motion.

The Government's second motion to continue would have delayed the trial until December 11, 2023, but Defendant filed new pretrial motions (ECF Nos. 91-95) on November 14, 2023. These pretrial motions automatically triggered an exclusion under the Speedy Trial Act, stopping the speedy trial clock on that date. 18 U.S.C. § 3161(h)(1)(D). With the clock stopping on November 14 because of Defendant's motions, the Government would be responsible for an additional 6-days' delay based on its second motion.

5

That said, the Government would be responsible for 27-days' delay if no time is excluded from the speedy trial clock. When added to the other 22 days that have lapsed from the speedy trial clock, there would be only 59-days' delay in this case—an amount that does not reach the Speedy Trial Act's 70-day threshold. But this calculation assumes that the 27 days attributable to the Government were improperly excluded under the Speedy Trial Act. They were not.

In written opinions, this Court carefully considered whether TFO Cain was essential and unavailable, and the Court found in the affirmative. (ECF Nos. 87, 92). Without citation to authority, Defendant appears to posit that the Court faulted by considering the Government's proffer without sworn evidence. But the Seventh Circuit has already determined that information from the prosecution is sufficient to justify a Court's finding that a witness was essential and unavailable. *United States v. O'Connor*, 656 F.3d 630, 641 (7th Cir. 2011) (affirming the district court's denial of the defendant's motion to dismiss where the prosecutor informed the district court about the witness's medical issues at a pretrial hearing). Defendant could have filed meaningful objections at the time the Government made those motions, but he did not pursue that course. Instead, he waited until the eve of trial to assert that the 27 days were improperly excluded. For the reasons set forth in this Court's prior orders, (ECF Nos. 87, 92), the delays based on the unavailability of a Government witness were warranted. There is no violation of the Speedy Trial Act.

Although the Court rejects Defendant's arguments under the Speedy Trial Act, it must still dispose of Defendant's arguments under the Sixth Amendment. The Sixth Amendment guarantees an accused "the right to a speedy and public trial" too. U.S. Const. amend. VI. Although related, the constitutional and statutory rights are distinct. *See United States v. Gearhart*, 576 F.3d 459,

462 (7th Cir. 2009) ("The constitutional right to a speedy trial is both narrower and broader than the corresponding statutory right."). "Thus, 'a violation of one [right] may be found without a violation of the other.'" *O'Connor*, 656 F.3d at 643 (quoting *United States v. White*, 443 F.3d 582, 588 (7th Cir. 2006)).

The Seventh Circuit employs a four-factor test to evaluate speedy trial claims under the Sixth Amendment: "(1) whether the delay was uncommonly long, (2) whether the government or the defendant is more to blame for the delay, (3) whether the defendant asserted his right to a speedy trial in due course and (4) whether the defendant suffered prejudice as a result of the delay." *United States v. Harmon*, 721 F.3d 877, 882 (7th Cir. 2013). The first factor is essentially a threshold requirement and "[a] delay approaching 1-year is presumptively prejudicial." *Id.*

The period of delay in this case meets that threshold as it is approaching two years since Defendant's initial indictment, but the other factors give Defendant fits. The second factor has also been characterized as "the reasons for delay." *Hart v. Mannina*, 798 F.3d 578, 596 (7th Cir. 2015). "The Supreme Court has explained that 'a valid reason, such as a missing witness, should serve to justify appropriate delay.'" *Harmon*, 721 F.3d at 883 (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). Another valid reason for delay is the government's need to obtain additional incriminating evidence such as obtaining forensic reports, witness interviews, or additional discovery. *Id.* Other notable factors in the overall analysis would be a defendant's filing of a motion to dismiss just a week before trial and a defendant's failure to seek a severance from a co-defendant to mitigate delays from their joint prosecution. *See O'Connor*, 656 F.3d at 643.

It is either Defendant or his co-defendant Belcher—as Defendant never sought a severance—that are responsible for the majority of the delay here. With the original indictment

7

filed on March 23, 2023, and trial now set for March 25, 2024, there have been nearly two years of delay in this case. But the Government is only responsible for 27-days' delay, and it provided valid justifications for those delays. That leaves nearly 700 days of delay that can be properly attributed to Defendant. Most of the delay falls squarely on Defendant's shoulders.

Neither does the third prong weigh in favor of Defendant. His counsel did assert Defendant's right to a speedy trial twice in a general sense while in open court. And Defendant did oppose both of the Government's motions in principal. But he never filed any meaningful objections to those motions near the time the Government moved to continue. Defendant could have objected or requested a hearing but did not. Instead, he sat on his rights until the eve of trial. Defendant filed his motion to dismiss on March 14, 2024—almost ten days after the pre-trial motion's deadline had passed, just ten days before the trial date, and months after the Court granted the Government's continuances. Based on the circumstances, the Court cannot say this factor weighs in Defendant's favor either.

On to the final prong. Prejudice is examined in light of the interests which the Sixth Amendment seeks to protect. *Harmon*, 721 F.3d at 883. These interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 883 (citations omitted). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. But "prejudice is not caused by allowing the Government properly to strengthen its case, but rather by delays intended to hamper defendant's ability to present his defense." *Harmon*, 721 F.3d at 883-84 (internal quotation marks omitted; citations omitted).

8

Indeed, Defendant has been incarcerated for over two years at this point. He contends that his ability to regularly communicate with counsel was hampered due to his incarceration. His difficulty communicating partnered with the significant sentence he may face if convicted, allegedly created anxiety and concern for Defendant. The Court views this argument as a non-starter. Many defendants remain incarcerated while they await trial and many face significant sentences if convicted. All of them likely face the same communicative barriers as Defendant here. And potentially facing a significant sentence does not make Defendant special.[3] *See United States v. Ward*, 211 F.3d 356, 361 (7th Cir. 2000) (recognizing that general allegations of anxiety and concern were insufficient to support finding a Sixth Amendment violation). Defendant must show something more for the Court to find that these interests weigh in his favor.

The meat and potatoes of the prejudice prong remain. *See Barker*, 407 U.S. at 532. The Supreme Court has provided examples what possibly impairs the defense. *Harmon*, 721 F.3d at 883. These examples include "missing or deceased witnesses, loss of memory of defense witnesses, and loss of other exculpatory evidence." *Id.* at 883 (citing *Doggett v. United States*, 505 U.S. 647, 654 (1992); *Barker*, 407 U.S. at 532). Defendant has lost no potential witnesses and even requested a continuance to enable his own witness to testify. Nor has Defendant alleged any loss of exculpatory evidence. Indeed, he does not focus on the impairment of his own case; rather, he laments the availability of what he concedes to be highly relevant evidence—the fingerprint analysis. *See Patterson*, 872 F.3d at 436 (Recognizing that generalized presumptions of evidentiary prejudice that results from lengthy pretrial delays are "entitled to lesser weight than prejudice

---

[3] Defendant also could have obtained a quicker trial and minimized his anxiety by requesting a severance from Belcher, which, if granted, would have avoided any delay caused by his co-defendant. But he did not.

9

supported by tangible impairments to the defense[,]" especially where the most compelling evidence against the defendant is physical evidence).

The Government submitted evidence for fingerprint analysis just two days after filing its first motion to continue. (ECF No. 158-1). And, according to the examination report, the examination was not conducted until nine days after the Government filed its second motion to continue. (ECF No. 158-2). Defendant appears to imply that the Government's proffered reason for a continuance—TFO Cain's unavailability—was a sham, so that the Government could strengthen its case with the fingerprint testing. Without citation to authority, Defendant points to, at most, suspicious timing.

Other than this suggestion by Defendant, there is no evidence of foul play here. Defendant does not point to any damage to his case-in-chief but faults the Government for strengthening its own case during proper continuances. *See Harmon,* 721 F.3d at 884 (suggesting that, even without a missing witness, a brief trial continuance is appropriate solely to allow the Government to gather relevant evidence). No evidence shows that the Government's continuances had anything to do with obtaining fingerprint evidence. And the Government disclosed the fingerprint analysis report before the deadline to do so had passed on March 12, 2024. The Court will not imply governmental misconduct where Defendant merely points to the timing of the fingerprint analysis. Laboratory testing is commonplace during the pendency of a case. Simply, Defendant was not prejudiced by such common testing. Nor were his Sixth Amendment rights violated.

Lastly, Defendant, as alternative relief, seeks to have the fingerprint evidence excluded. But he has provided no authority to suggest that relevant evidence should be excluded just because it was obtained after the indictment. Indeed, the opposite is true. *See Harmon,* 721 F.3d at 884 ("A

defendant is not entitled to, and justice is ill-served by, a trial during which the Government is not able to present relevant evidence."). With no evidence of foul play, the Court will not exclude the fingerprint evidence solely on this basis.

**IV.     Conclusion**

For these reasons, Defendant's Motion to Dismiss or, in the alternative, to Exclude Fingerprint Evidence (ECF No. 158) is DENIED.

SO ORDERED on March 22, 2024.

                                               s/ Holly A. Brady
                                              CHIEF JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT